First case up this morning is Marriweather v. Corey et al. For the appellant is Hania Soheil. Is that pronounced correctly? Yes. Oh, lucky guess. And for the appellee, Christopher Galanos? Yes. Pronounced correctly? Correct. Oh, good stuff. Okay, Ms. Soheil, you may proceed. May it please the court. Good morning, your honors. My name is Hania Soheil, and I represent the appellant, Corey Marriweather, in this matter. Before I begin, I would respectfully request this court for five minutes of rebuttal time. You hear me? This case involves a direct appeal from the judgment of Sangamon County Circuit Court, where it ruled on the appellee's motion for summary judgment and found that the trial court committed an error in granting the appellee's motion for summary judgment when there existed a genuine issue of material fact where the appellee owed any duty to the appellant. Summary judgment is a drastic measure for disposing of litigation and should only be granted if there is no disputed facts and not only if the undisputed fact can be inferred differently from different people. The issue involves a grant of trial court summary judgment, thus the standard of review for this reviewing court is denial. The appellant today argues that the circuit court committed an error in granting the appellee's motion for summary judgment for two different reasons. The appellant first argues that the circuit court committed an error because the appellant did put forth enough evidence from which it could have been inferred that there were prior criminal incidents surrounding the property in question of 2405 Ladley Court and the appellee breached his duty by not providing safety measures to the common area of the property. Before I go into my arguments, I would like to give this court a brief summary judgment. Summary of facts. On March 15, 2008, the appellant was shot. The appellant was shot in front of her own mother. The appellant was shot when she was just sitting in her own apartment, an intruder who came into the front door, entered, and blindly shot her. Counsel, I thought her mother was in a bedroom when the shooting occurred. Yes, Your Honor. But the mother, there is testimony from the mother that she heard the shot. And when she came out, she found her daughter laying and the blood coming out of her. The evidence has showed that the only point of entry to this apartment complex was the front door. The evidence has showed that Springfield Police Department found casings of bullets on the front door steps. Evidence has shown that at the time of the incident, the appellant was only 26 years old. Evidence has showed that due to this horrific event, the appellant is now paraplegic. Evidence has showed that to this date, the appellant has to use a wheelchair and is no longer able to engage in activities somebody similar to her age would do. Now, going into my argument, the appellant argues that the appellant did put forth enough evidence from which it could have inferred that the appellee voluntarily undertook to provide security measures to the property in question, but did so negligently. Now, Counsel, we know that the general rule is that the landlord owes no duty to the tenant, correct? Yes, Your Honor. And then there are a couple of exceptions to that rule. Yes. And there are cases, and there have been several cases cited by the parties involving, you know, whether putting lights out, whether or not that constitutes undertaking a duty. How is it that you believe that you have shown that the mere placing of lights at a common entry place somehow is assuming, voluntarily assuming a duty? Your Honor, the Supreme Court decision in Roe v. State Bank of Lombard actually touched point on this argument and says that the act of providing security lights in a common place area cannot be construed to assume that the landlord voluntarily undertook to provide security measures. However, and I will cite the exact language from the Roe case, states that the proper question is whether a particular landlord, under the facts of each case, assumed a duty to provide security measures. As far as this case in Burgundy, we imagine, actually elaborated on this language and clearly stated, we reject the contention that the purposes of light have been established for all cases because the extent of a voluntarily undertaking is not simply determined by the specific act undertaken, but upon a reasonable assessment of its underlying purposes to determine on a case-by-case basis. Burgundy even took it a step further and analyzed a different string of cases from First District where the specific act taken was providing security guards, but it analyzed the cases and found that in cases where the security guards were there to provide safety to the property, there was no liability, but in cases where the same security guards were there to provide safety to the tenants, they attached liability. We don't have security guards here, right? Correct, Your Honor. We're dealing with lighting issues in Burgundy. Specifically, there have been conversations between the potential tenant who became the tenant with the landlord, at least that's what the court found, that the conversations revolved around, I'm a single woman, I'll be out at night, will these lights be on, my security is very important to me, and the landlord reassuring the potential tenant, yes, I understand, I'm a single woman. I'm a woman, too, and I understand you need to be safe. I mean, isn't that quite different than the situation we have here? Your Honor, this is a little different from the situation we have here, but however, if you take the reasoning to what the reasoning says, that it should be done on a case-by-case basis, we have an appellee here who, without even anybody stating the word security, then asked, what kind of services do you provide to this building, and the question stated, I provide security lights. If you look at the record, he goes in detail that the light, outside light, though, is placed in close proximity to the front door, so it can illuminate the whole area, so it is visible, and I don't want nobody going in there in the dark. The appellee also goes in detail in the record about the door that is in place, the front door, and he said that, I have changed the lock three or four times. I have spent a lot of money to change the lock. The reason I spent so much money, because I want to make sure the lock is functional. I don't want anybody that do not belong in there going in. I do not want anybody who do not have access to the keys to go in. He stated, he comes to his apartment complex twice a month to check the lights, to check whether the lock is functional, to inspect the property. With these facts, what I am getting at is, Your Honor, that voluntarily undertaking cannot be defined by the act that is taken, but it must be defined by the party providing that act intended to provide. And in this case, we have a clear indication by the appellee's own testimony that he intended these measures that he took as security measures. And he breached this because we have contradicting testimony. We have the appellant who is stating that on the night of the incident, the locks were not functional. The lights were not working. The appellant's mother testifying, on the night of the incident, the locks weren't working. The lights weren't working. The appellant on the other hand is saying, no, the lights were working. I checked the next day. The lock was functional. I checked the next day. With these testimonies and with these facts, it is clear that the appellant, that the appellant intended to provide security measures, but breached his duty in doing so. Your Honor, the appellee in his brief again relies on the language of Roe v. State Bank, but it is our position that the appellee, in relying on the language of Roe v. State Bank, as to the common area of lighting not being able to construe as voluntarily taking, is taking the case very narrowly. It is taking this case very narrowly because of the fact that Roe and Borgonje has established that the determination must be made on a case-by-case basis and does not depend on the specific act undertaken. There is another Supreme Court decision in Full v. Chicago Housing Authority that also found that when a landlord locks certain floors of the building and does not lock the other floors of the building, assumes a voluntary duty to provide safety to the floors he locked, but breaches that duty at the same time when he leaves the other drawers unlocked. Wasn't that about access to keys to people who shouldn't have access and so they were able to access these floors and commit criminal acts against people? Yes, Your Honor. So they didn't keep up with the keys? Your Honor, Full v. Chicago Housing Authority deals with where they had locked certain floors, did not lock certain floors, and an intruder came in and he or she raped this female and then threw her out of the window. Right. Doors were not locked. Now, Your Honor, another case that deals with the issue of keys is Roe v. State Bank in which the court held that when a master key goes missing, it is the duty of the landlord because he had the control over the property to provide safety measures. Now, in this case, again, we are not dealing with a key, but… Okay, I need to stop you there because you say that Roe stands for the proposition when you have control over the property, you have to ensure safety measures. Doesn't Roe stand for the proposition that when you are aware that master keys are out and unaccounted for, that then you have a duty to either change the locks or to make sure that the people who may have these master keys who shouldn't can't access the property? Isn't that really what Roe is about? Your Honor, the facts you are right, the facts of Roe are these. But the reasoning of Roe refers to the fact that a landlord, when you do have access and control over the property, so by retaining the master key, if you do have access and control over the property, then you do have the duty to provide safety. When you retain control over the property, you voluntarily undertake to provide safety. And you have to take reasonable actions to not let the master key go missing. Another case, Shea versus Chicago, also stands for the proposition that when a landlord retains access to and control to the property, then he assumes a voluntary undertaking to provide safety. Similar in this case, we have an appellee who testified that he has the master key, that he goes there twice a month to his apartment complex to check on the property, that he makes sure every time he goes there that the lock is working. He makes sure every time he goes there that the lights are functional. He inspects the property. With these sets of facts, it is clear that by retaining control over the premises of the apartment complex, he has voluntarily assumed a duty to protect the tenants. So when would a landlord not have the obligation to provide security under that stance? I mean, if I retain control over the property that I own, I have a key to it, then I'm automatically required to ensure the security of the tenants against the general rule? Your Honor, I would say that just retaining the key would not constitute as voluntary undertaking, but if you put that along with the testimony that the reason I have the key is because I do go and inspect the property twice a month. I inspect it for the locks. I check the lighting. That two things, when you are inspecting the property and retaining the control of the master key, you do voluntarily assume a duty. So, as a matter of policy, we're telling landlords, stay away and you're in better shape? I wouldn't say that, Your Honor. Well, isn't that what you would have as hope? Isn't that the effect? I mean, the very argument you've just been now making, had we told the landlord in advance, you know, we might hear an argument that every so often you go by and you're checking the property and doing that is subjecting you to a liability you would not otherwise have. So you better not do it. But, Your Honor. Isn't that the effect? There are many different landlords, and there are many different landlords who do not actually come to the property and examine. They don't kind of provide somebody with a portion. The notion that by doing this, he's now voluntarily undertaking a potential liability that he would not otherwise have, that's the effect of our decision that you're asking us to reach, is it? Again, Your Honor, I would say that it wouldn't, because if somebody does come on the property and inspect that, you kind of provide your tenants with a, even if you come to the property and you say you inspect it, you're providing your tenants with a false sense of security, that this place is safe to live. This place, he's going to come, if the logs go bad yesterday, he's going to come tomorrow and he's going to fix that. I'm going to be in a much safer place. When we're talking about public policy, this area, and I'll get into my second argument a little bit more about that, this is a high-crime area. This guy, the appellee, actually approached the appellant's mother, and that's why she wasn't looking to live in an apartment complex, but that's why she lived there, because he lowered the rent. When you're living in a high-crime area, you pay less, but at the same time, you know that the doors would be working, you know that the lights would be working, and I can still, or they can still, eventually protect themselves from the crime. In this case, that's not what happened. In this case, the door wasn't working. In this case, the lights weren't working. It could have been prevented if the doors were working, and if the lights were working, the intruder could have been visible. The intruder could not have even entered into the door in the first place. You're talking about one of the intruders, right? Your Honor, the evidence, if you take it most favorably to the appellant, shows that there was only one intruder. Wasn't there an individual who scaled the building and was shooting inside as well? Your Honor, she did kind of talk about it, but then later during her testimony, she wasn't sure, and that could be that she wasn't shocked at the time, because the police department only found a few cases of bullets at the front door. And later in her testimony, she took it back and she stated that she's not even sure if there was a second intruder to begin with. The appellee in the case also relied heavily on a third district decision in Kerrigan. Kerrigan is totally distinguishable from this present case. The reason it's distinguishable, Bill, is because the case of Kerrigan dealt with burglar alarm. This case is different because we are not saying that the front door would have... In Kerrigan, the court held that it was different because the burglar alarm would have not necessarily prevented the burglary. It would have just alarmed the intruder. In the present case, we are saying that the front door was the only point of entry. If you take the evidence most favorable to the appellant, that was the only point of entry. There is no back door from what the testimony came from, the appellant and the appellee. And the intruder gained access to that door because the appellant in her own testimony testified he must have gotten through that door because that's the only door. And again, Springfield Police Department did find casings of bullets on the front door. So unlike Kerrigan, where the burglar alarm could have alerted the assailant, in this case, the front door or lightning would have prevented the entry. Your Honors, this is a simple issue when we talk about voluntarily undertaking. I cited a few cases for you which states that voluntarily undertaking is not dependent on the act. It is dependent on the specific intention of the actor who is providing that act. Again, we have testimony of the appellee who goes in detail about the lights and how this light has to work and this light has to illuminate the whole area so people are visible. He testified in great detail about the lock on the door. He knows that he has paid a lot of money. He knows how the door works. He doesn't want anybody who does not belong in the building to go in there. He does not want anybody who didn't have a key to go in there. From these own facts, it is clear that the appellee intended to provide security measures to the appellant but breached his duty because on the night of the incident, neither was the door working, neither was the lights functional. Now going into my second argument. The second argument is that the appellant did put forth enough evidence from which it could have been inferred that the surrounding area, there were prior incidents in the surrounding area of 2405 Ladley Court, but the appellant breached his duty, the appellee breached his duty, that he failed to provide safety to the commonplaces of the apartment complex. A bill of particulars was attached to the complaint and a bill of particulars, if you analyze it closely, showed that one and two months prior to the incident, there were two reports of home invasion. Three to four months prior to the incident, there was an assault reported. Six months prior to the incident, there was a burglary reported at the very same property, 2405 Ladley Court. And counsel, all of these prior incidents, how do they relate to the condition of the building? This area is a high-crime area. The fact that there is no lighting, the fact that there is no law, does not deter the assailant or the intruder from committing crime and relates to the physical property, physical makeup of the building. The appellee in his testimony testified that he is not aware that this is a high-crime area. The appellant and his mother testified that they are aware of the incidents that happened in Ladley Court. Now, Ladley Court, even though they're of the incident that I just cited for this court, are not on the exact property, but Ladley Court is a one-tenth mile stretch of road. And there have been several incidents, and it's very unreasonable to believe that the appellee did not know about that. Appellee himself testified that every Sunday he sits down with the other property owners and actually, you know, talks about the property. It's very unreasonable to believe that he didn't know. And if he didn't know, he should have known because he was the property owner. He had a duty to his tenants of making sure the building was in a safe condition. In this case, the building was. The common areas were not in a safe condition. The door was not locked. The lighting wasn't functional. The first district case in Tripling v. Chicago Housing Authority had kind of a similar fact, where they had the landlord was aware of the first two burglaries, and when the third burglary happened in a similar fashion, the landlord was liable because he's, even though. Therefore, Your Honor, I, for all these reasons, I would respectfully request that this court. You have an opportunity to address this again in rebuttal. Okay. Thank you. Mr. Galanos. May I please report? Your Honor, my name is Chris Galanos, and I represent the defendant, Ian McCrory, in this matter. As Justice Holder White pointed out, the place to start is with general rule. The landlord does not owe his tenant a general duty to protect them from criminal actions of third parties. And that's, of course, what this case is about. On March 16, 2008, in the early hours of the morning, two unknown assailants, for unknown reason, staged an armed assault from two different directions in a locked apartment. And as a result, the plaintiff did sustain severe injuries. And, of course, we have sympathy for that. But that's not the landlord's responsibility. And under Illinois law, he's not responsible for those injuries. Now, as the court has pointed out, there are two exceptions. The voluntary undertaking exception and the prior criminal incidence exception. I'll discuss the voluntary exception first. And then coinciding with that is the issue of proximate cause. And I'll discuss why even if the court were to find the voluntary undertaking exception applicable, why it wouldn't matter in this case. And finally, I'll touch on the prior criminal incidence exception. The voluntary undertaking exception in the landlord-tenant context is simply an extension of the common law principle that when one voluntarily undertakes to do something, they have a duty to do it in a reasonably safe manner. Underneath the voluntary undertaking exception umbrella, there are two separate causes of action, nonfeasance and misfeasance. We briefed nonfeasance. We thought it might be an issue in the case. On page 18 of the plaintiff's appellate brief and on pages 4 and 5 of the reply brief, they appear to have conceded that they are not claiming nonfeasance. They are not claiming any reliance on a promise by Mr. Corey to the plaintiff or the plaintiff's mother. And so for that argument, we will stand on our briefs. Turning then to the misfeasance, and this is, of course, the actual voluntary act, which they are claiming was done negligently. Now, in this case, your honors, plaintiff wants the court to find that my client assumed the duty to protect her from criminal assault by some actions that he took. And again, this is not just any criminal assault. This is a calculated, coordinated attack for unknown reasons. Voluntarily assuming such a responsibility would be an awesome undertaking. It would be something that somebody would not do lightly. And it's not something, absent of extraordinary circumstances, that this court should impose on somebody. And so with that in mind, we can look at the actions that the plaintiff is claiming my client took that led to this kind of a responsibility. The first thing the plaintiff is claiming is that he put a door on the common area of the apartment building that had a lock on it, and he did. Testify to that. There is a dispute whether the lock on that door was operable on the date of the incident, but that's not an issue of material fact, because under the law, regardless, my client had no duty to provide that lock and had no duty to maintain that lock, at least not in the context of protecting from criminal actions. Why not? Well, your honor, the court in N.W. v. Amalgamated Trust explains that the duty to maintain the common areas is not the duty to police, it's simply a duty to maintain and repair. If we were here because the lights were out and a tenant tripped, this might be a different case. But the duty that we're talking about here is something far different. We're talking about trying to protect somebody from other human beings who have thoughts of their own, they have actions on their own, but we don't know what they're going to do. Well, it occurs to me that, you know, I'm somewhat familiar with Gladden Court because I'm from Springfield. It's not a particularly desirable place to be living. It seems to me there's a question of fact as to whether or not the lock was broken on the night of this assault. The property manager says, no, it was working, and the tenant said, no, it wasn't. Is that a question of fact that interferes with summary judgment? No, your honor, it's not, and that's cited a number of cases for that exact proposition. Well, don't we have to assume, however, that the lock was broken as we evaluate this testimony? Absolutely, your honor. We're not contesting that for the purposes of the motion for summary judgment in this field. We have to assume that the lock was broken, and we have to assume that it had been broken for the entire duration of the residency of the tenants. But the case law, again, is clear. Martin v. Usher, N.W. v. Amalgamated Trust, Shea v. Preservation of Chicago, Sanchez v. Wilmer Real Estate, all stand for the proposition that the provision of a common area door or a lock is commonplace and it does not give rise to a duty to protect against criminal actions of third parties. And the reasoning is simple. We want landlords to provide doors with locks. These are provided for convenience. They are something that should be encouraged. And, again, when you're talking about the kind of undertaking the plaintiff is asking the court to impose, the simple provision of a lock, how is that going to stop somebody who is set on this kind of assault? I mean, the evidence shows that one locked door didn't stop this attack. Why would two? It showed that there's no evidence of lighting or anything to do with it. The second assailant, which we believe is clear from the record that there was a second assailant, didn't come through the door. He climbed a balcony, broke a window, and shot into the apartment. Well, counsel, the appellant says, you know, your client said that the locks were provided for security and to keep people out. And so who better than your client knows what his intentions were with respect to this and what he intended to provide for this tenant? Well, Your Honor, I think it's clear that the purpose of locks, of course, is to keep unauthorized persons out or to make sure that only people who are supposed to have access to get in. That's a different argument than saying that by providing this service, he intended to protect from somebody who's going to ignore that. And secondly, the cases that discuss, I'll talk about the security guard cases, when there's a specific indication that security guards are provided to protect against assault rather than against property, of course, they tend to lean towards finding perhaps the duty there. Here, there's no indication that he was looking to provide safety from criminal assaults. He just didn't want people on. And this is his property, the common areas at least. He didn't want somebody on his property. That's a normal thing for a landlord to want. It does not give rise to a duty to protect against criminal actions. And this is supported by the fact that the plaintiff has been unable to cite one case with the proposition that the provision of a common area door with a lock gives rise to a duty to protect against criminal activity. Briefly, counsel mentioned the Phillips case. And as the court pointed out, that case was about missing keys or leaving keys in an area that was accessible to the general public when the whole purpose was to keep it from the general public. Further, in that case, there had been prior assaults on those vacant floors, which is why they undertook to protect them. Here, as we'll talk about with prior criminal incidents, there weren't any in the record to establish that the landlord knew of or that there even were any prior criminal incidents connected with the characteristics of the building. Turning then to the issue of lighting, as with common area door locks, the issue of lighting has been considered and rejected by Illinois courts, including the Illinois Supreme Court in Roe v. Lombard. As with door locks, common area lighting is commonly provided. It's a convenience, something that we want to encourage landlords to provide, but it cannot be said to give rise to a duty to protect against criminal acts of third parties absent some pretty extraordinary circumstances. And the Rogoni case versus Matcheff that the plaintiff references, it's an interesting case. I don't think it applies here in any fashion. First of all, because that court was analyzing a case of non-thesis, not misthesis. What the court there had said was the landlord made a specific promise to this specific tenant that they were going to provide lighting for the specific purpose of preventing her from assaults by third parties. That's obviously not the case here. There was no explicit promise. The plaintiff has already conceded that. And so because this is not a case of non-thesis, Rogoni does not really apply. And the only reason the court was even willing to find anything there, I think is summed up by the concurrence in that opinion, which states the only reason that we're finding that lighting might give rise to a voluntary undertaking is because of this explicit promise. Absent that, the concurrence said, this wouldn't have been an issue. Now, the plaintiff mentions that my client testified during his deposition that these were security lights. And yes, he did use that phrase, but again, security from what? He certainly never stated, I'm going to put these lights on the exterior of the building to protect you from these criminal activities. We want landlords to provide light. We want tenants to be able to see where they're going. But it's simply too much to state that by putting a light on the building, you're going to be willing to take the responsibility of stopping unknown intruders from committing an assault like this. Even if the court were to find that the voluntary undertaking exception did apply, there's still no evidence that the alleged negligence was the approximate cause of the plaintiff's injuries. The plaintiff has put forward no evidence indicating that the lack of light or the broken door lock in any way facilitated this assault. Although the assailants were never apprehended, the record establishes that these were determined individuals. It's undisputed that the actual door to the plaintiff's unit was locked. Whoever broke that door down kicked in a locked door. Second, we know there was a second shooter who climbed the exterior of the building somehow. There was no staircase. We don't know how he got up there. But obviously, he was determined to get up there, made that climb, and then broke a window. So locks and windows, lighting, to say that these would have stopped these individuals is pure speculation. In the Borgogna case, there was a confession from the individual who attacked the plaintiff who specifically testified, look, I use the darkness to facilitate my crime. We don't have anything like that here. The plaintiffs have put forward no evidence of the approximate cause. And accordingly, we simply think that there was a voluntary undertaking. The trial court got it right, and we would ask that the court uphold the summary of judgment. Now, turning to the prior criminal incidents exception, we did file a motion to strike. The portions of the brief relied on the bill of particulars. We believe that that bill of particulars is here to stay. Well, here's the thing. You mentioned it in your brief, page 36, evidence not miscible trial. I cannot be used to support or oppose the motion of summary judgment. Aren't you required at trial to raise that issue before the trial court when the court is considering the motion of summary judgment? And that may be, Your Honor, but I don't think that there's evidence. Wait a minute. That may be? You mean there's uncertainty about that? Well, Your Honor. Then you can just let, for instance, the plaintiff present whatever the evidentiary material plaintiff wishes in opposition to your motion, say nothing about it, and raise the issue on appeal? No, Your Honor. I think that we should have raised the objection in the trial court. And frankly, as plaintiff pointed out, we cited it to the bill of particulars in our own brief. So then what's the basis of your objection now to our considering it  Well, Your Honor, because there's no evidence in that bill of particulars that really supports their case. Counsel, that's evaluating the bill that doesn't address the motion to strike it. What's your basis to argue that your motion to strike should be granted given that you failed to raise this issue at the trial level? Well, Your Honor, I think that the trial court, there's no evidence that the trial court considered it. There's no evidence that the trial court made it part of their decision. You mean it's okay to raise for the first time at the appellate court level evidentiary material you think the trial court should not have considered as long as we don't know whether the trial court considered it? Your Honor, as I've stated, it was our position that we cited to it in our own materials. And I can't recall, as we sit here, what extent the plaintiff relied on it in their opposition to our motion for summary judgment. But if it should have been raised, you're correct that it wasn't. Ultimately, we don't think it's relevant. The motion That's a different, you know, the evidentiary value of it is a different issue than whether it can be considered at all, Counsel. I'm always curious as to where the memo came from that talks about motion practice before the appellate court. Whoever it was who sent it ought to reconsider. It's generally speaking not the conducive or helpful thing for us or for you. And especially in these circumstances, this is a matter which was before the trial court. And we're not likely to, you know, your best argument is, Gene, we know what the weight was given to it. Well, typically trial courts aren't required to specify. It's helpful if they do, but it's not required if they don't. Well, go ahead.  Thank you, Your Honor. Ultimately, when we filed the motion, there's nothing in the bill of particulars that supports the plaintiff's case. It's a list from an unknown public source that shows a number of criminal activities occurring in a wide area surrounding the apartment. If you look at the actual crimes that occurred at the apartment, there are none and no evidence to suggest that any of these activities had anything to do with the physical characteristics of 24-05-11 in court, nothing to suggest that they had anything to do with a broken common area door lock, lack of lighting. There's simply nothing there. My client testified that he was not aware of any prior criminal incidents. The plaintiff, you know, said that might not be credible, but they have not put any forward any evidence to counter that. Well, again, for purposes of motion of summary judgment, we just have to take all these factors, if there's any dispute at all, against you, don't we? We do, Your Honor. And that's a fact. There isn't any. The plaintiff's own testimony is, I'm not aware of any prior criminal activities while I've been in the building. I've never seen any intruders in the building that were unauthorized. Her mother said the same thing. The only thing that they talked about were some vague allegations of shootings in the surrounding neighborhood on, I think it's Normandy, maybe some others on Ladley Court, but nothing with regard to this particular building. The plaintiff's mother's car was broken into in the parking lot, but, again, there's no evidence that that had anything to do with the characteristics of 24-05 Ladley Court. When we look at the prior criminal incidents exception, the Dunkevich case and the Stribling cases, those are the cases that really personify how this exception is supposed to be used. In those cases, there was something about the buildings that might not have been foreseeable to a landlord that posed a problem. The criminal took advantage of that condition, committed a crime, the landlord became aware of it. In those cases, of course, look at it and say, well, what would the landlord have had to have done to prevent that second assault? In some cases, it's something very simple. Moving a ladder that you left out where people have access to it or locking vacant apartment doors. In those cases, the landlord failed to take those actions, and these multiple other assaults took place. Of course, we're willing to find a duty. Here, no prior criminal activities associated with the property testified to by my client as well as the plaintiff and her mother. The case is much more analogous to Hill versus Chicago Housing Authority. In that case, the plaintiff was shot in the lobby of the Chicago Housing Project and alleged, among other things, inadequate lighting was a cause of his injuries. The plaintiff alleged the landlord was aware of other shootings. There was testimony from police officers in the two years prior to the incident described. There were 10 shootings and three or four stabbings in the project, and the landlord was aware of those incidents. However, the court found no indication in the allegations of the complaint or the police officer's testimony that these incidents were in any way connected to the physical characteristics of the building. And that's what we have here. Vague allegations by the plaintiff of crimes in the area and nothing connected to the physical characteristics of the building. Accordingly, there's no way to determine that this crime was foreseeable to Andrew Corey. In absence of foreseeability, it cannot be a liability. And for this reason, we don't believe the prior criminal incident's exception applies. In conclusion, Your Honors, the trial court correctly held that the plaintiff failed to afford any evidence establishing that Mr. Corey owed the plaintiff a duty. Protect her from the criminal assault. And we would request that this court uphold the summary judgment. Thank you. Thank you, Counsel. Ms. Saleo, any rebuttal, ma'am? Yes. Go ahead. Your Honors, the counsel himself testified that the affilee did provide security, but he provided security for his own apartment building, for the common area, since he had possession of them. Your Honor, that is not a question of law. What the affilee intended to provide security for is a question of fact. And for that reason, summary judgment should not have been proper. The counsel cited different cases, starting from ML Gated, Martin v. Usher, Sanchez. Your Honor, the ML Gated case is a 1990 case. Martin v. Usher is a 1977 case. Sanchez, and those two cases, the reason I cited the year is because Berganje was a 2005 case. All of those cases are from the same district. Berganje, again, stated very clearly that it does not depend what was the specific act that was undertaken. It depends what was the reason behind that act. In Sanchez, which was a newer case, which was a 2010 case, the court didn't say that the fact that door lock or lighting cannot be considered a voluntary undertaking. The court in Sanchez said, whatever the defendant did, there is no indication that he breached his duty. There is no indication that the back door or the front door was unlocked. So here's one of the problems, though. It seems to me that when we're talking about rental property, there's the general rule that the landlord, lessor, is not responsible for the criminal acts of third parties, is not a guarantor of safety. You say, well, you know, provide the lights and a lock and look at that. In what instance doesn't a landlord provide lights and locks? And it seems to me that the exception, you're arguing, swallows the rule. Your Honor, the exception, again, voluntary undertaking, should be determined by the intention of the party. This is, again, it's a high crime area. Well, he's providing lights and locks. You know, he says, well, it's the appropriate thing to do. If he had said it's the appropriate thing to do, he's not liable. If he says it's probably going to help for safety, he's then liable. Your Honor, that should have been done in the area that the property in question is. He's saying he's providing locks and lighting, but we are arguing he didn't provide locks and lighting on the date of the incident. The lighting wasn't working. The locks were not working. And that creates in itself a question of fact. And that was not a question of law. And thus, it is our position the summary judgment wasn't proper. Therefore, Your Honor, for all of these reasons, we respectfully request that this honorable court reverse the judgment of Sangamon County Circuit Court and remand this case for further proceedings. Thank you, Counsel. We'll take this matter and advise it to be in recess for a few moments.